UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Cause No. 1:24-CR-217-SEB-MG |
| MOISES BOJORQUEZ, | ) ) ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by counsel, John E. Childress, Acting United States Attorney for the Southern District of Indiana, and Meredith Wood and Tiffany J. Preston, Assistant United States Attorneys, hereby files this sentencing memorandum in advance of the hearing currently scheduled for March 25, 2025.

**I.      Introduction**

Moises Bojorquez raped his own one-year-old son. He filmed it. He shared the video of it. All to fulfill his own selfish sexual desires. This wasn't just a one-time, momentary lapse in judgment. He sexually abused his son several times. And over the course of five months, he spoke with a woman—in disgusting and graphic detail—about the abuse he wished to inflict upon his own child, and others.

The defendant's depravity did not end there. He didn't just victimize his own son. He distributed child pornography of other minor victims, not only his son. He tried to sell it. He solicited it from a girl he thought was 15 years old. He possessed over a thousand images and videos of child pornography, including images depicting

1

newborns and sadistic and masochistic abuse. His actions re-victimized countless other minor victims who had already been exploited.

Conduct of this magnitude—conduct so depraved, so vile—demands a significant penalty. One that underscores the seriousness of the offense, provides just punishment, promotes respect for the law, affords adequate deterrence, and protects the public. One that ensures no child will ever again be harmed by the defendant. A sentence of 50 years is sufficient, but not greater than necessary, to accomplish these purposes.

## II.   Background

The stipulated factual basis and PSR thoroughly cover the defendant's offense conduct. There are, however, additional facts that are significant for the Court's sentencing determination, which are set forth below.

### A. Telegram Messages with K.A.

Over the course of five months, the defendant spoke almost daily with K.A.[1] via Telegram (an encrypted messenger app) regarding his sexual exploitation of his own son and his sexual interest in children. He repeatedly offered to abuse his son and show it to K.A. He waited until he knew he had an opportunity while his son's mother wasn't there to catch him, even apologizing to K.A. when he had to cut his abuse short.

- **KA:** thinking of you, and your hot cock, and sexy little boys
- **KA:** mmm passed out little boy. so easy to use
- **Bojorquez:** Hi baby she might leave soon
- **KA:** mmm good

---

[1] K.A. was charged and sentenced in Ohio state court.

2

- *[immediately after a video call]*
- **KA:** for when u cant be alone with ur hot baby, u can stroke to these at least
- **KA:** i have one where a little one is riding a dildo. If I find it do u wanna see it?
- **KA:** also baby that WAS SO HOT. loved seeing you use that ittle baby mouth. loved especially see u on top of him mmmm
- **Bojorquez:** Thanks baby I'm sorry I had to cut it short. It was so hot I want to make you cum mommy. I came so fast today man your voice is so dam hot

- **Bojorquez:** Moms home right now sadly I want to ram my cock in that little mouth so mommy can eat my cum

- **Bojorquez:** Hey baby I'm about to be alone with him

- **Bojorquez:** I have my little boy for a bit
- **Bojorquez:** I have really special treat for my pedo mom
- *[Bojorquez sends two files]*
- **KA:** ohhhh fuck daddy!
- **KA:** that vid of you and your baby boy made me so fucking horny!

- **KA:** i loved that video daddy
- **KA:** hes such a good boy for u
- **KA:** wish u would have talked dirty to him a little more 😜
- **Bojorquez:** She was home in the next room
- *[There are two video calls that together last about 8 minutes]*
- **KA:** soooo fucking hot! i wanna help u rape babies everyday! 🤩
- **Bojorquez:** Yes baby man I couldn't help but cum to that amazing voice telling me to ram him

(Government Exhibit 1 at 3-4, 7-8, 11, 73, 75-76, 97-99.)[2]

---

[2] The government has attached the text messages between the defendant and K.A. in full form so that the Court is aware of the depravity of these messages and to provide their context to the Court. That said, the government has identified in this sentencing memorandum those texts it believes are most relevant for the Court's consideration. The images and videos have been redacted from the filing.

The defendant discussed further sexually abusing his son, to include possible physical harm.

- *[K.A. sends an image titled "thumb_Brutal Fuck.jpg"]*
- **KA:** soon u can do this to him
- **Bojorquez:** Oh I wish baby
- **Bojorquez:** I would tear him open so hard would not be able to stop raming his ass

(Ex. 1 at 17-18.)

The two also discussed their plans to sexually abuse more children, not just the defendant's son. They spoke of having additional children for the sole purpose of sexually abusing them, and then homeschooling them to avoid getting caught. At one point, K.A. even suggested kidnapping a child to abuse while they waited for her to get pregnant with a daughter.

- **KA:** daddy i love you and our boys so much, my pussy drools all day thinking of us all together
- **KA:** getting really naughty and fucked up
- **KA:** showing that girl of yours the door so i can move in and raise our incest family with u
- **Bojorquez:** I would just keep going back all day and dumping my cum in him over and over mommy can make me a new one
- **Bojorquez:** I want you to have my little incest family 👪
- **Bojorquez:** Oh my God if we have a little girl she's gonna be raised with daddys cum
- **Bojorquez:** Baby can I see that pussy I want to cum to it
- **KA:** im not feeding our daughter milk. shes gonna survive off her daddys cum alone
- **Bojorquez:** Yes mommy I get those milky tits you and her can have daddys cock
- **Bojorquez:** My little boy sucking mommy's tits 😍 while I use our little girls mouth and jerks our boy
- **KA:** if i had a pic of me on this computer. i need to get tele on my phone so I can take a lil pic ;)
- **KA:** THIS a thousand times this!

4

- **Bojorquez:** Oh baby please I want to show him mommy so he knows who his real mom is. So I can put my cock in his mouth when he see you he knows its time to eat
- **Bojorquez:** Yes mommy all for you

- **Bojorquez:** Remember baby when you take his cock just think about your family baby one day you'll get daddys cock
- **Bojorquez:** Man I love that video of that pretty pussy
- **KA:** He's just a cock to me now. I close my eyes and think about you cumming inside me and about our baby boys cock in my mouth
- **KA:** It stays horny for you
- **Bojorquez:** You will get to taste our little boy while your real daddy gets to be inside you
- **Bojorquez:** I want to ram my cock in that mouth hear that beautiful voice gag on my fat cock as you scream from joy as he rams his arm in you 😜 as the other sucks mommy's nipple and I squeeze the other
- **Bojorquez:** Just have your boys all over you
- **KA:** Mmm baby I want that so much 🤩
- **Bojorquez:** And when he gets bigger can wait to fuck you from all 3
- Just using mommy till she gives us a sissy to share with
- **KA:** I wanna get on top of ur oldest. Grind on his little dick. And take u in my ass at the same time
- **Bojorquez:** Yes baby yes
- **Bojorquez:** Tell me baby tell me
- **Bojorquez:** Drain daddys cock
- **KA:**  Fuck I can't wait that long  let's just steal a little girl until I'm finally pregnant
- **Bojorquez:** Yes Mommy

- **Bojorquez:** Thats my Pedomommy giving me the best family
- **KA:** I'll have them in secret, and homeschool them. Know one will know about our sex addicted kids

- **Bojorquez:** I want our boys to be able to empty those balls in you train them to fuck their sister really good

(Ex. 1 at 19-22, 39-42, 47, 49.)

5

The defendant is not simply going along with what this woman suggests. In many instances, it is the defendant instigating it. In fact, on several occasions, he is the one who asks K.A. to send him videos. And without being prompted or directed by K.A., the defendant offered to create and send videos of himself sexually abusing his son.

- **Bojorquez:** Send me a video of what im doing to our little girl
- **KA:** Baby I want to so bad. You have no idea how hard it is for a nasty verbal mommy like me to stay quiet, but my bf is literally 10ft from me. He's off work today :(
- **Bojorquez:** Oh its ok baby I know you want to

- **Bojorquez:** I want you to fuck him today and think of daddy and his little boy using mommy. If you up for it would love a little recoding but I don't want to ask to much of mommy I want use to enjoys this till maybe one day I can tastes you
- **Bojorquez:** I'm driving myself crazy right now fuck I'm horny
- **KA:** if i get a spare moment i'll send u a recording to make ur pedo cock feel good daddy
- **KA:** me too!! just love my new incest family
- **Bojorquez:** Thank you baby 😘 when I get the chance I'll try and make you a little movie of me using him. Never recorded anything. But mommy deserves it
- **KA:** mmmm i would fucking love it!!

(Ex. 1 at 55-56, 29-31.)

The defendant also indicated that he found enjoyment in raping his son and in videos depicting the rape of other children, especially when they screamed. His messages suggest he believes children exist solely to fulfill his sexual desires, and he has no regard for whether he hurts them, even at one point calling them "little baby sluts."

- **Bojorquez:** Yes get daddy hot rape vids are also hot

6

- **Bojorquez:** I seen ao manny little cum rags today man I wish I can get one in a blind spot and cum on those cute little watery eyes.
- **Bojorquez:** Or just ram my cock deep in that little mouth and face fuck them deep and fast and leave them to be found used by their mommy
- **Bojorquez:** I wanted to use her just as is make a hole to ram my cock in her ass and fuck her over the counter. Or just like a doll  Squeezing her side and fucking her in the air

- **Bojorquez:** Daddy really need to rape his son

- **Bojorquez:**  If my cock out he will try and suck it a little he comes up and puts his mouth on and runs
- **Bojorquez:** My little faggot is leaning how to make daddy happy
- **Bojorquez:** Can't wait till he's sucking my cock 😊
- **Bojorquez:** I'm moving can wait to rape my little boy in my new place
- *[Bojorquez sends the video charged in Count 1 depicting himself forcing MV1 to perform oral sex on him]*
- **Bojorquez:** I need to hear my mommy's beautiful voice telling me to fuck kids rape those little fucks use my little girl
- **Bojorquez:** Have them use mommy
- *[Missed call]*
- **Bojorquez:** I'm with him baby

- **Bojorquez:**  little girls are for raping

- **KA:** mmm i wanna watch u stroke to some filthy baby vids
- **Bojorquez:**  Yes mommy
- **Bojorquez:** Daddy wants to cum for you
- **Bojorquez:** ALL OVER THOSE LITTLE BABY SLUTS

(Ex. 1 at 13, 92, 94-96, 119, 145.)

### B. Sexual Exploitation of MV1

The conduct in this case, of course, was not limited to messages discussing the abuse.  What the defendant said is important for the Court to consider because his words provide insight into the person he is, particularly his undeniable sexual

7

attraction to minors. But what he did is even more troubling. The defendant sexually exploited MV1, who was just over one year old when the abuse occurred.

Through a forensic examination of electronic devices, investigators identified two files depicting the abuse of MV1. In the first video, MV1 was crawling on the floor in a diaper, while the defendant sat in a chair with his pants around his ankles. The defendant, whose face was fully visible, pulled MV1 onto his erect penis, forcing MV1 to perform oral sex on him. MV1 cried out in distress.

The second file is an image that depicts the defendant placing his erect penis about one-quarter of an inch away from MV1's face.

In addition to these files, the defendant admitted that he had forced his penis into MV1's mouth three times over live video chatting—instances of abuse for which we do not have an image or video. He also admitted that he had masturbated and/or ejaculated on or around his son, including near his face or mouth approximately three or fewer times.

### C. Other Communications

Given that the majority of communications appear to have been made through an encrypted messenger app, we will never know the full extent of the defendant's communications with others about his sexual abuse and interest in children. However, investigators were able to identify additional communications between the defendant and others, apart from K.A., regarding his attempt to obtain and distribute child pornography.

For example, the defendant sent messages to an unknown user about selling links on a platform that is notorious for sharing child pornography.

- **Bojorquez:** I have a 600gb mega link for sale
- **Unknown User:** how much you wont?
- **Bojorquez:** 100
- **Unknown User:** ?$? ¥? £? €?

Similarly, the defendant solicited videos from someone whom he believed was 15 years old, explaining how often he sells this type of material.

- **Bojorquez:** Do you have videos with others in it or just you
- **Bojorquez:** You said your 15
- **Bojorquez:** I bet that pussy is so nice and tight
- . . .
- **Bojorquez:** Sorry I sell a lot of vids and unless u got some amazing vids of you talking and moaning using toys or a guy im ok.  Dont get me wrong you are super hot and definitely will get people to buy from you. But im ok sorry for waisting your time

In addition to these messages, investigators also determined that the defendant distributed child pornography via his Google email account.  And the defendant admitted to investigators that he had a large collection of child pornography through the file-hosting website MEGA.

### D. Possession of Child Pornography

The defendant's collection of child pornography was extensive.  It was found on two of his electronic devices—606 images and 566 videos containing child pornography or from known child pornography series.  The files included infants and toddlers, violent content including the forcible rape of teenagers and bondage involving young children, and bestiality.  Some files depicted babies that appear to be only a few weeks old.  One file showed an adult male penetrating the anus of a

child, estimated to be between one and three years old, while she cried and screamed. All of this material is consistent with what he told K.A. via Telegram.

### III. Application of the 3553(a) Factors

#### A. A Sentence of 50 Years is Necessary to Reflect the Seriousness of the Offense and Provide Just Punishment for the Defendant's Victims.

The seriousness of this offense is difficult to overstate. It is one of the most serious offenses that comes before this Court. The primary victim in this case was an extremely young child—an infant. Just a month past his first birthday. Still in diapers. He may have not yet taken his first steps. He certainly couldn't talk, which made it impossible for him to tell anyone about the abuse he suffered.

Most horrifying, though, is that the defendant abused his own infant son. Perhaps no relationship is as sacred as that of a parent and child. Parents are supposed to protect their children—support them, provide them with safety and security, love them unconditionally. The defendant abused that position of trust in the most sickening of ways on multiple occasions, taking pleasure in each instance of abuse.

As if it wasn't enough to abuse his own one-year-old son, the defendant filmed that abuse and shared it with a woman to fulfill his own deviant sexual desires. He didn't give a second thought to the harm he was causing his own child. Instead, he spoke in disgusting detail about what he wanted to do to his son.

The messages reveal the defendant's utter depravity. He repeatedly referenced raping his son and, at one point, threatened to "tear him open so hard."

10

And the defendant acted on those desires. He took steps to avoid detection, waiting for opportunities to abuse his son and film it—telling K.A. when his son's mother wasn't there to stop him.

The defendant inflicted serious harm, first when he raped his son and again through the trauma his son will deal with the rest of his life. His son is still too young to appreciate what happened, but he will likely one day learn that his own father sexually abused him in this way and then shared it with another person. Indeed, his father will be out of his life for a prolonged period of time, and his son will someday find out why. His son's mother will have to grapple with whether, how, and when to tell him that his own father did this to him. This offense has forever changed their lives.

But they aren't the defendant's only victims. There are numerous other minor victims in the images and videos the defendant shared and possessed—nearly 100 different series. These victims are no less innocent, no less traumatized than the defendant's son. These children were victimized the first time when these files were created, but the defendant re-victimized them all over again by viewing and sharing these files with others. The defendant also tried to solicit and sell child pornography, further creating a market for this material and encouraging more sexual exploitation of children. Not only did the defendant increase the demand with his own grotesque interests, but he also increased the supply by creating additional child pornography and distributing it to others.

11

These victims' own words are powerful. As one victim put it, she is "revictimized every single time one of these images or videos is viewed, downloaded, or sent to another individual." She is "constantly living in a hypervigilant state, always on the lookout for danger" because someone might know her from the child sex abuse material.[3] Another victim fears that he "will be recognized" every time he sees someone in a grocery store or walking around his community, and he turned to drugs and alcohol to cope.[4] The Court should take this harm—and the need to protect these victims—into account as well.

The defendant may point to the fact that the messages between him and K.A. seem to have occurred over only a few months. But the defendant's distribution and possession of child pornography dates back to at least 2021. This wasn't his first time engaging in this type of behavior. This wasn't a lapse in judgment. It is simply the first time he was caught. There were multiple years in which the defendant clearly had a sexual interest in minors. That prolonged conduct represents who he truly is.

He may also try to deflect blame by pointing the finger at K.A. Of course, both the defendant and K.A. are graphic in their messages. But the messages show that it was the defendant who offered to create videos of his son. The defendant carefully planned his abuse, timing it when MV1's mother was not around, and calling K.A. when he had the opportunity to abuse MV1. He asked K.A. in the first

---

[3] Tara's Victim Impact Statement. (Dkt. 50 at 21.)
[4] Andy's Victim Impact Statement. (Dkt 50 at 12.)

instance to create videos, and he offered to film himself abusing his son without K.A. having to ask. To be sure, K.A. deserves her own just punishment for her conduct, and she has been sentenced by a court in Ohio; however, her own abhorrent behavior does not mitigate the defendant's behavior in any way.

At bottom, this is an extremely serious offense. The sentence imposed should reflect that. And it should provide just punishment to the victims. It should tell them that this type of conduct will never be tolerated. In particular, it should send a message to MV1—that when the time comes that he learns about the atrocities done to him by his own father, he will never have to worry about the defendant harming him, or anyone else, ever again. That justice has been done.

### B. A Sentence of 50 Years Will Promote Respect for the Law, Afford Adequate Deterrence, and Protect the Public.

Through his conduct, the defendant has demonstrated that he is a menace to society and that he has no respect for the law or safety of others. The only reason he is not continuing to abuse children right now is because law enforcement officers stopped him. He never would have stopped if he hadn't been caught.

Rather, his actions were clearly going to escalate. The defendant took pride in telling K.A. that his son was learning and that he couldn't wait for his son to perform oral sex on him—that he couldn't wait to rape his son in his new place. The defendant told K.A. that she too could abuse his son in the future, telling her that she "will get to taste our little boy."

The defendant also planned to abuse more children. He repeatedly voiced his desire to run away with K.A. and have more children with her—an "incest family"—

13

so that they could abuse them. This wasn't some empty fantasy though. The two were specific in their plans. They discussed the defendant leaving his partner, running away together, and that K.A. would become pregnant with a daughter for them to abuse. K.A. had her own plan to avoid being caught: she told the defendant she would have kids "in secret" and "homeschool them" so that "[no] one will know about our sex addicted kids." They planned to train the defendant's son to have sex with their new sister. K.A. suggested, in the meantime, stealing a little girl until she could have a daughter, to which the defendant said simply, "Yes Mommy."

In a case that involves countless shocking facts, one of the most disturbing is that, while he was having these discussions, the defendant's then-fiance was pregnant with his third child. Thankfully he was stopped before he could abuse this child. There is thus a strong need to deter the defendant from committing additional crimes against children.

The sentence is this case is particularly important also as a means to deter others, not just the defendant. Parental sexual abuse of children is especially hard to detect and prevent, and unfortunately, it is as not as rare as we may want to believe. In fact, family and home environments have been the most common setting for child pornography production for the last 50 years. Parentally produced content constitutes the most highly traded and in-demand child pornography online, with a distinct trend toward the more severe abuse of younger children.[5]

---

[5] Michael Salter & Tim Wong, *Parental Production of Sexual Abuse Material: A Critical Review* (Jul. 2024), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC11155224/.

14

This is because parents have constant access to children, and as a society, we tend to assume that parents always have their children's best interests at heart. We don't want to believe that parents are capable of doing this to their own children. Parental offenders, though, exploit their status as protectors and guardians to commit their crimes. And when children are abused by their own parents, they are often groomed and unaware of the wrongfulness of what their parents are doing to them. Even worse, until children reach a certain age, they have no voice to report; they have no ability to alert someone of their horror. When an infant is at its most vulnerable, child molesters like the defendant are at their most powerful. A lengthy sentence will send a message to would-be offenders that we will punish this conduct with the most serious of sanctions.

A sentence of 50 years is also necessary to protect the public. Clearly the defendant is a danger to children. He repeatedly spoke in graphic detail about the abuse he was inflicting on his son—and the intent he had to do even more harm. The defendant, in fact, abused his son on multiple occasions. If he was willing to do this to his own son, what is he willing to do to children he doesn't even know? The defendant sees no value in children; instead, he views them solely as a means to satisfy his own disgusting sexual desires, even if doing so involves physically harming children. Prison is the only way to ensure that no more children will be victimized by the defendant.

A sentence of 50 years will deter the defendant and others, promote in the defendant a respect for the law, and protect the community.

### C. A Sentence of 50 Years Avoids Unwarranted Sentencing Disparities.

A sentence of 50 years is in line with other sentences that have been imposed on similarly situated offenders in this district, and thus it would not create any unwarranted sentencing disparities. For example:

Donald Richards was sentenced to 60 years for sexually exploiting his daughters, ages three and five, over a period of months and then sharing those images over the Internet. *United States v. Richards*, No. 1:20-CR-146-JPH-DLP.

Pedro Ibarra was sentenced to 45 years for persuading a child under the age of 13 to engage in sexually explicit conduct at a local hotel, which Ibarra recorded on his cell phone. Ibarra also engaged in, and recorded, sexually explicit conduct with another victim who was less than 15 years old. *United States v. Ibarra*, No. 1:22-CR-24-JPH-MJD.

Sonny Applegate was sentenced to 44 years after pleading guilty to two counts of sexual exploitation and one count of committing a felony offense while required to register as a sex offender. Applegate used Snapchat to communicate with an 11-year-old child, demanding that the child create and send videos of sexually explicit conduct. *United States v. Applegate*, 1:22-CR-169-JRS-TAB.

This Court sentenced Michael Ingram to 40 years for taking photos of himself sexually abusing his eight-year-old daughter and then distributing those photos to his co-defendant. Ingram and his co-defendant also discussed sexually exploiting Ingram's daughter in disgusting detail. *United States v. Ingram*, 1:20-CR-330-SEB-MJD.

Finally, this Court imposed a sentence of 45 years on Bennie Schuck, who, along with the victim's mother, sexually abused a minor victim under the age of 12. Over the course of at least a year, Schuck and his co-defendant created images of the abuse, which they sent to each other and over the Internet. *United States v. Roe*, 1:19-CR-299-SEB-TAB.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court impose a sentence of 50 years' imprisonment. Such a sentence is sufficient, but not greater than necessary, to meet the goals of sentencing under 18 U.S.C. § 3553(a).

Respectfully Submitted,

JOHN E. CHILDRESS
Acting United States Attorney


By:   /s/ Meredith Wood
      Meredith Wood
      Assistant United States Attorney
      Meredith.Wood@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on March 19, 2025, the foregoing Government's Sentencing Memorandum was filed electronically.  Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


                                        By:    <u>/s/ Meredith Wood</u>
                                                          Meredith Wood
                                                          Assistant United States Attorney
                                                          Meredith.Wood@usdoj.gov